# UNITED STATES BANKRUPTCY COURT
# DISTRICT OF PUERTO RICO

| | |
|---|---|
| IN RE:<br><br>**La Fundadora, Inc.**<br>**Juan Miguel Munoz Roldan**<br>**Patricia Yvonne Galindez Matos**<br><br>**DEBTORS** | **CASE NO. 09-05820 SEK**<br>**consolidated with 09-05922 SEK**<br><br>**CHAPTER 12** |

## CHAPTER 12 PLAN

The above captioned debtors, La Fundadora, Inc., Juan Miguel Munoz Roldan and Patricia Yvonne Galindez Matos, by and through the undersigned counsel, hereby submits the following proposed plan of reorganization pursuant to the provisions of 11 U.S.C. Section 1201, et seq., and specifically to 11 U.S.C. Section 1222.

Pursuant to the provisions of Sections 1222 of the Code, debtor proposes the classification and treatment of claims as hereinafter stated.

Creditors and other parties in interest are urged to read and consider this Plan in its entirety since this represents a proposed legally binding agreement between the debtor, creditors and parties in interest.

## ARTICLE I
## DEFINITIONS

For the purposes of this Plan of Reorganization, the following terms shall have the respective meanings set forth.

1. **"Administrative Creditor"** shall mean a person entitled to payment of an Administrative Expense Claim.

2. **"Administrative Expense Claim"** shall mean any Claim constituting

a cost or expense of administration of the Chapter 12 proceedings allowed under 11 U.S.C. Sec. 503(b) and 507(a)(1).

3. **"Allowed Claim"** shall mean any Claim as allowed pursuant to 11 U.S.C §502. Unless otherwise provided for in this Plan, "Allowed Claim" shall not include interest, cost, fees, expenses or other charges on the principal amount of such Claim from after the Petition Date.

4. **"Allowed secured Claim"** shall mean any Allowed Claim, which is a Secured Claim and shall include in the amount thereof – unless otherwise stated in this Plan – all interest accrued on or after the Petition Date, fees, costs, and charges as may be allowed.

5. **"Bankruptcy Code"** or **"Code"** shall mean the provision of Title 11 of the United States Code, 11 U.S.C. Sections 1201 et seq., as amended from time to time.

6. **"Bankruptcy Court"** shall mean the United States Bankruptcy Court for the District of Puerto Rico, having jurisdiction over these Chapter 12 proceedings.

7. **"Bankruptcy Rules"** or **"Rules"** shall mean the Federal Rules of Bankruptcy Procedures, as amended from time to time.

8. **"Bar Date"** shall mean the deadline of November 9, 2009 for all general unsecured creditors and January 13, 2010 for all governmental creditors, after which any proof of claim filed will not have any effect on this Plan and will not entitle its holder to participate with other Claims under this Plan.

9. **"Claim"** shall mean any right to payment whether or not such right is reduced to judgment, liquidated, unliquidated, fixed, contingent, matured, unmatured, disputed, undisputed, legal, equitable, secured or unsecured; or any right to an equitable remedy for breach of performance if such breach gives rise to a right of payment, whether or not such right to an equitable remedy is reduced to judgment, fixed, contingent, matured, unmatured, disputed, undisputed, secured or unsecured.

10. **"Class"** shall mean a category of holders of Claims or Interest that is substantially similar to other claims or interest in such Class.

11. **"Confirmation Date"** shall mean the date the Order of Confirmation in this Chapter 12 proceeding and becomes a Final Order.

12. **"Consummation Date"** shall mean the date by which all of the conditions precedent to full consummation set forth in this Plan, shall have be met or waived.

13. **"Creditor"** shall mean any Person who has a Claim against the Debtor, which arose on or before the Petition Date or a Claim of any kind specified in 11 U.S.C. Sections 502(g), 503(h) or 502(l).

14. **"Debtor"** shall mean the corporation in case 09-05820 and the individuals in case 09-05822, La Fundadora, Inc., Juan Miguel Munoz Roldan and Patricia Yvonne Galindez Matos.

15. **"Effective Date of the Plan"** shall mean thirty (30) days after the order of confirmation of the plan, becomes a final order and shall b e the date on which there shall be made all cash payments required by

the Plan.

16. **"Estate"** shall mean the property owned by the Debtor that comprises the Chapter 12 estate of the Debtor in the above-captioned Chapter 12 proceeding.

17. **"Final Order"** shall mean an Order of the Bankruptcy Court (or other court of appropriate jurisdiction) which shall not have been reversed, stayed, modified or amended and the time to appeal from or to seek review or rehearing of such order shall have expired, and about which, no appeal or petition for review or rehearing or certiorari proceedings is pending, as a result of which such Order shall have become final according to Rule 8002 of the Rules of Bankruptcy Procedure, as such Rules may be amended from time to time.

18. **"Lien"** shall mean a mortgage, pledge, judgment lien, security interest, charging order, or other charge or encumbrance on Property as is effective under applicable law as of the Petition Date.

19. **"Liquidation"** shall mean the complete liquidation of the Property of Debtor's Estate, by a duly appointed trustee, according to the provisions of Chapter 7 of the Bankruptcy Code.

20. **"Liquidation Analysis"** shall mean the comparison of the current assets and liabilities of the Debtor, in order to determine the Liquidation Value of the Debtor's Property.

21. **"Liquidation Value"** shall mean the value that, any item of the Debtor's Property could be expected to bring during Liquidation.

22. **"Order of Confirmation"** shall mean the Order of the Bankruptcy

Court confirming this Plan, pursuant to 11 U.S.C. § 1325.

23. **"Person"** shall mean any individual, corporation, partnership, association, Joint Stock Company, trust, unincorporated organization, government or any political subdivision thereof, or other entity.

24. **"Petition Date"** shall mean July 15, 2009, the date on which the Debtor's filing of his Voluntary Petition commenced the instant Chapter 12 proceedings.

25. **"Priority Claim"** shall mean any Allowed Claim, other than an Administrative Expense Claim or Priority Tax Claim, to the extent entitled to priority in payment under 11 U.S.C. Section 507(a).

26. **"Priority Creditor"** shall mean any Creditor that is the holder of a Priority Claim.

27. **"Priority Tax Claim"** shall mean any Allowed Claim of any Person who is entitled to a priority in payment under 11 U.S.C. Section 507(a)(8).

28. **"Priority Wage Claim"** shall mean Allowed Claim of any Person who is entitled to a priority in payment under 11 U.S.C. Section 507(a)(3).

29. **"Property"** shall mean the property of the Estate, which shall be administered by the Debtor or the Chapter 12 Trustee.

30. **"Pro Rata"** shall mean in the same proportion that a Claim or Interest in a given Class bears to the aggregate amount of all Claims (including disputed Claim until allowed or disallowed) or the aggregate number of all Interest in such Class.

31. **"Secured Claim"** shall mean a Claim, the holder of which is vested

with a perfected, non voidable Lien on Property in which the Debtors have an interest, which Lien is valid, perfected, and enforceable under applicable law and not subject to avoidance under the Bankruptcy Code or other applicable non bankruptcy law, and is duly established in this case, to the extent of the value of such holder's interest in the Debtor's interest in such Property, as determined according to 11 U.S.C. Section 506.

32. **"Secured Creditor"** shall mean a Creditor who has a Secured Claim.

33. **"Trustee"** shall mean the standing Chapter 12 Trustee, Jose R. Carrion Morales, Esq.

34. **"Unsecured Claim"** shall mean a Claim, which is other than an Administrative Expense Claim, a Secured Claim or a Priority Claim (including a Priority Tax Claim or a Priority Wage Claim), including any Claim specified in 11 U.S.C. Sections 502(g), 502(h) or 502(l).

35. **"Unsecured Creditor"** shall mean a creditor that is a holder of an Allowed General Unsecured Claim.

36. **"Vesting of Property"** Upon full consummation of the plan, all of the property of the chapter 12 estate shall vest in the debtor.

37. **"Voluntary Petition"** shall mean the voluntary Petition for Relief filed by the Debtor on the Petition Date for cases 09-05820 and 09-05822.

## ARTICLE II
## ASSETS AND LIABILITIES AS OF PETITION DATE

1. ASSETS:

Debtor's asset composition as listed on Schedules A and B has remained substantially unchanged from that listed in the schedules filed with the Court.

Real properties were scheduled in the aggregate amount of $2,170,081.00. Debtor owns properties, which include the residence and parcels of lands. The latter are use as a dairy farm. The properties which Debtors have interest in are the following:

(a) Dairy Farm, equipped with the milking building, ranch, hangar and wells. The same has 44.592 cuerdas and it is located at Bo. Rocha, Carr. 444, Km. 7 Hm. 4, Moca, Puerto Rico. This Property is registered in the Public Registry of Moca, Title 216, Page 250 with the designated farm number 12,684. The same has been valued at $676,492.50.

(b) Parcel of land with 1.971 cuerdas located at Bo. Rocha, Carr. 444, Km. 7 Hm. 4, Moca, Puerto Rico. This Property is not registered in the Public Registry. The same has been valued at $25,000.

(c) Parcel of land with 11.26 cuerdas located at Bo. Rocha, Carr. 444, Km. 7 Hm. 4, Moca, Puerto Rico. This Property is registered in the Public Registry of Moca, Title 125 and 375, Page 18 and 125 with the designated farm number 5,116. The same has been valued at $110,000.

(d) Parcel of land with 15 centimos located at Bo. Rocha, Carr. 444, Km. 7 Hm. 4, Moca, Puerto Rico. This Property is not registered in the Public Registry. The same has been valued at $5,000.

(e) Three parcels of lands, with variable areas, but adding 174.81 cuerdas, located at Bo. Rocha, Carr. 444, Km. 7 Hm. 4, Moca, Puerto Rico. The first parcel of land is composed of 130 cuerdas. Property is registered in the Public Registry of Moca, Title 115, Page 253 with the designated farm number 647. The second parcel composed of 39 cuerdas. This property is registered in the Public Registry of Moca, Title

179, Page 72 with the farm number 938. The last parcel of land is composed 5.81 cuerdas. This property is not registered in the Public Registry. All of these parcels of land have been valued at $1,286,989,000.

(f) Parcel of land with 6553 square meters located at Bo. Rocha, Carr. 444, Km. 7 Hm. 4, Moca, Puerto Rico. This Property is registered in the Public Registry of Moca, Title 81, Page 91 with the designated farm number 3,281. The same has been valued at $6,600.

(g) Parcel of land with 1 cuerda located at Bo. Rocha, Carr. 444, Km. 7 Hm. 4, Moca, Puerto Rico. This Property is not registered in the Public Registry. The same has been valued at $10,000.

(h) Residential house with three bedrooms, two bathrooms, dining and living room, kitchen, porch and office with a lot of land with 1 cuerda located at Bo. Rocha, Carr. 444, Km. 7 Hm. 4, Moca, Puerto Rico. This Property is not registered in the Public Registry. The same has been valued at $50,000.

The group of lots described in subsections (a), (c), (e) and (g) are occupied as a dairy farm.

Debtor owns 100% un-liquidated interest over several personal assets. Personal property was scheduled in the total amount of $875,910.20 of which $2,600.00 were listed as household goods and clothing; $300.00 was listed as jewelry; $18,620.00 were listed in vehicles; $62,500.00 were listed as machinery, farming equipment, and supplies used in business; and $187,500.00 were listed as farm animals, particularly cattle cows; and $1,658.30 compose of miscellaneous personal properties such as checking accounts, utility bonds, cash, etc. Also,

Debtors listed the interest over the milk production rights issued under the license number 3124 comprised of 26,000 production liters with an approximate fair market value of $597,000.00. Debtor estimates the current fair market value of each liter in $23.00.

A reconciliation of assets and projected realization in the event of a liquidation scenario in the Liquidation Analysis enclosed as **Exhibit A**.

2. LIABILITIES:

Debtor's schedules of liabilities as referenced to the schedules and proof of claims filed in this case indicated that secured claims approximate $1,947,100.80. General unsecured creditors approximate $478,547.00. Unsecured priority claims under 11 U.S.C. § 507(a)(8) approximate $16,585.19.

## ARTICLE III

## DESIGNATION OF CLAIMS AND INTEREST

A. DESIGNATION OF CLAIMS

The Plan divides the creditors into Six (6) classes. The classes of creditors are as follow:

1. **CLASS 1 – TRUSTEE EXPENSES**

Class 1 shall consist of the Chapter 12 trustee statutory commission computed pursuant to 28 U.S.C. § 586(e).

2. **CLASS 2 – ADMINISTRATIVE EXPENSES**

Shall consist of Allowed Administrative Expense Claims, as provided under Section 503 of the Code, including but not limited fees and expenses of Debtors' counsel and other professionals as may be allowed by the Bankruptcy Court upon application therefore and after notice and hearing

according to the Bankruptcy Code and Rules, any unpaid taxes or fees accrued since petition date and cost accrued since the petition date.

These amounts will be determined and fixed upon written application to the Court.

3. **CLASS 3 – BANCO SANTANDER – SECURED CLAIMS**

Banco Santander has balance pending in the amounts of $1,736,116.73; $116,151.72; $62,162.86 and $30,319.19, respectively for four different loans. These amounts are secured by a chattel mortgage over debtor's milk production rights known as "milk quota" at rate of $23.00 authorized to debtor by Oficina de Reglamentacion de Industria Lechera. Also, creditor holds as collateral several mortgage promissory notes encumbering debtor's real properties, meaning the different lots which comprise the milk farm and the residence. In addition, Banco Santander has received from Debtor an assignment of a portion of the milk production payments paid weekly by Suiza Dairy.

4. **CLASS 4 – FIRST BANK OF PUERTO RICO – SECURED CLAIM**

First Bank of Puerto Rico filed a proof of claim in the amount of $5,568.60 (Claim no. 2). This was filed as a secured proof of claim with collateral represented by a 2004 Jeep Cherokee. The conditional sales contract over this vehicle matures on December 3, 2012.

5. **CLASS 5 - CRIM – STATUTORY LIEN OVER REAL PROPERTIES**

First Bank of Puerto Rico filed a proof of claim in the amount of $7,209.96 (Claim no. 7). This was filed as a secured proof of claim with the collaterals described in subsection (a) through (g). Debtors will pay this

claim without interest.

6. **CLASS 5 – GENERAL UNSECURED CREDITORS**

General unsecured creditors considering those listed by debtors, those who filed a proof of claim and those secured creditors, who after debtor's estimates reached by debtors have agreed to be considered part of their claim as unsecured, are included in this class.

The debt under this class has been estimated by debtor in the amount of no more than $478,547.00.

## ARTICLE IV
## TREATMENT FOR CLASSES OF CLAIMS AND INTEREST

1. **CLASS 1 – TRUSTEE ADMINISTRATIVE**

The Chapter 12 trustee shall receive and retain as the trustee's percentage fee under this plan an amount equal to ten percent (10%) of all payments distributed by the trustee pursuant to the plan with respect to payments in an aggregate amount not to exceed $50,000.00, five percent (5%) of all payments distributed by the trustee pursuant to the plan with respect to payments in an aggregate amount higher than the $50,000.00 but in excess of $1,000,000.00 and reasonable compensation not to exceed three percent (3%) of all payments distributed by the trustee pursuant to the plan with respect to payments in an aggregate amount that exceeds the before mentioned amount of $1,000,000.00.

2. **CLASS 2 – ADMINISTRATIVE EXPENSES**

Shall consist of Allowed Administrative Expense Claims, as provided under Section 503 of the Code. This class shall be paid by the trustee in cash and in full as soon as practicable, on the later of (a) the Effective Date

or (b) during the first year following the confirmation of the plan. These payments will be made by the Chapter 12 trustee.

3. **CLASS 3 – BANCO SANTANDER – SECURED CLAIMS**

This creditor's legal and equitable interest on the secured amounts will be modified upon the confirmation of this plan. Considering the value of the properties serving as collateral for this claim, the secured amount under this class as of the date of filing of the instant petition shall be $1,944,750.50. The arrears which Debtor's estimate around $60,000.00 will be covered through the Chapter 12 plan. These arrears emerge from the uncovered portions from July 2009 up until February 2010.

In regards to the principal balance owe the same will be paid as follows:

**Debt Balance Restructuring Upon Confirmation** – On the effective date of the plan, the outstanding secured debt of this creditor, considering interim payments due to this creditor and personal property as described herein will be restructured into an installment payment plan calling for consecutive bi-weekly to pay the secured amount determined herein in cash and in full. The outstanding secured balance has been estimated in $1,955,000.00. Once the plan is confirmed Debtor's will continue making payment of $2,000.00 monthly up until January 2010. On February 2010, Debtor's will begin with the amortization of the loan, since and as reflected in the Projections, enclosed as **Exhibit B**, is when Debtor's begin to receive adequate income to make higher payments. The mentioned amount will be paid in full, with interest computed at a fixed rate of 3.25%, payable in bi-

weekly installments of no more than $3,925.21. This payment will begin on February 2010, on the basis of consecutive monthly installments providing for the payment of the face amount, with interest computed at a fixed 3.25%, during a period of 5 years but on amortization computed over 30 years. Refer to Schedule of Payments under the Plan of Reorganization enclosed herein as **Exhibit C** and the loan calculator table enclosed herein as **Exhibit D**.

Upon the continued monthly payments of 5 years from February 2010, the outstanding secured balance should be of approximately $1,742,532.82. Starting in the 61 month of this plan, this discounted amount will be paid in full, with interest computed at a fixed rate of 4%, but on amortization computed over 25 years, payable in bi-weekly installments of no more than $4,242.89. These payments will start following the consummation of the plan and continue for 10 additional years, on the basis of consecutive monthly installments providing for the payment of the face amount, with interest computed at a fixed 4%, during a period of 10 years. After these 10 years have elapsed, the outstanding balance of $1,238,962.60, will be covered over the next 15 years with a fixed interest of 5.25%, the amortization will be over the mentioned 15 years, payable bi-weekly installments of no more than $4,593.25. This amount will be paid up until completion, meaning February 2040. Refer to the loan calculator table enclosed herein as **Exhibit D**.

If at any moment, Debtors decide to sale or refinance there will be no penalties as to the unpaid balance.

Regarding the security agreements over personal property, this

creditor will retain unaltered the legal and contractual rights over the property serving as collateral until full payment of the secured amount as detailed in the plan, except to the assignment of the milk production payments paid weekly by Suiza Dairy.

The payments proposed derive from the milk production proceeds remitted to this creditor will be fixed in no more than $923.08 every fourteen days from October 2009 up until January 2010; beginning on February 2010 and for the first five years Debtor's will make payments every fourteen days of $3,925.21 for the next 5 years and the increments will continue as described above up until full payment of the outstanding secured claim as stated in the reorganization plan.

Any additional amount due to this creditor in excess of the secured amounts, as stated herein, shall be deemed as general unsecured claim, with this remaining amount included within class 6 of the plan.

4. **CLASS 4 – First Bank of Puerto Rico - SECURED CLAIM**

Debtor will continue making the regular monthly payments directly to creditor, up until completion, meaning December 3, 2010. The arrears of $340.00 will be covered through the Chapter 12 plan with the proposed schedule of payments. See claim No. 2, case 09-05822. Creditor shall retain unaltered its legal equitable and contractual rights.

5. **CLASS 5 – CRIM - STATUTORY LIEN OVER REAL PROPERTIES**

The Trustee will pay this claim with the monthly installment Debtor's will make over the next 60 months and in accordance to the payment schedules.

6. **CLASS 6 - GENERAL UNSECURED CREDITORS**

The trustee will pay creditors under this class a proportional dividend over the allowed amounts of their claims. Debtor's has fixed and compromise to creditors under this class the payment of 100% of their claim plus interest. The Trustee will pay this class in accordance to the payment schedules that Debtor's will perform during the next sixty months from filing.

The Trustee will disburse payments to the secured creditors, First Bank of Puerto Rico and Banco Santander of Puerto Rico, only in regards to the arrears. The Trustee will also disburse for the secured claim filed by CRIM and the same will be paid from the proposed payment schedules. The proposed payments schedules are as follows: 0 * 3 months (from July 2009 up until September 2009), $500.00 * 5 months (from October 2009 up until February 2010), $1500.00 * 11 months (March 2010 up until January 2011), $3,000.00 * 12 months (February 2011 up until February 2012), and the final step up of $4,210.00 * 29 (March 2012 up until July 2014). Upon confirmation of the plan, these payments will be paid directly to the trustee from the business operations, named La Fundadora, Inc., on the basis of consecutive installments remitted biweekly and directly from Suiza Dairy.

Each Class 6 claimant shall receive from the trustee 100% dividends plus interest (3.25%) during a period of five (5) years, these payments starting thirty days after the confirmation of the plan, on the basis of consecutive monthly installments providing for the payment of the face amount, as per the Schedule Payments under the Plan of Reorganization enclosed herein as **Exhibit C**.

## ARTICLE V
## PAYMENT OF UNSECURED PRIORITY CLAIMS

## UNDER 11 U.S.C. SECTION 507(a)(8)

All allowed unsecured priority claims pursuant to 11 U.S.C. § 507(a)(8) of the Code, as the same are allowed, approved and ordered to be paid by the Court, will be paid as stated below. Debtor estimates the debt as follows:

   a. Internal Revenue Service: $1,200.00 for personal social security (Priority Portion). The 943 tax returns for the years 2009, second trimester. All of the previous trimesters are up to date. This amount will be estimated in the amount of $2,500.00.

   b. P.R. Department of Labor: $500 (Priority Portion).

   c. Puerto Rico Treasury Department: $200.00 (Priority Portion)

All allowed unsecured priority claims, pursuant to 11 U.S.C. § 507(a)(8) of the Code, as the same are allowed, approved and ordered to be paid by the Court, shall be paid by the Chapter 12 Trustee through monthly installments commencing on the effective date and within twelve months after the date of confirmation of the plan. The funds will be obtained from the business operations, named La Fundadora, Inc., on the basis of consecutive installments remitted biweekly and directly form Suiza Dairy. See Schedule Payments under the Plan of Reorganization, **Exhibit C**.

## ARTICLE VI
## PENDING LITIGATION

Debtor states that, as of this date, to the best knowledge and belief there is no pending or threatened litigation that may affect the liability or asset composition of their personal business.

## ARTICLE VII
## MEANS OF EXECUTION OF THE PLAN AND FEASIBILITY

Debtor shall have sufficient funds to make all payments then due under this Plan. The funds will be obtained from the business operations, named La Fundadora, Inc. A set of business projections, with the bases thereof, is included herein as **Exhibit B**.

On the Consummation Date of the plan, the operation of the named business, all estate assets and allowed claims and valid liens, as set forth in the plan, shall be and become the general responsibility of the reorganized debtors, which shall thereafter have the responsibility for the management, control and administration thereof.

Management of debtors' affairs, collection of moneys and distribution to creditors, will be under the control and supervision of the reorganized debtor, which will assume the same role the debtor in possession have assume through this reorganization process.

## ARTICLE VIII
## DISCHARGE OF CLAIMS

Except as otherwise provided for in this Chapter 12 Plan or in the Order of Confirmation, the rights granted by this Plan and the payment and distributions to be made hereunder, shall be in complete exchange for, and in full satisfaction, discharge and release of, all existing debts and claims of any kind, nature or description whatsoever against the Debtor.

Upon completing all conditions precedent to the consummation of this plan, all existing claims shall be deemed to be exchanged, satisfied, discharged and release in full; and all holders of claims shall be precluded from asserting any other or future claim based upon any act or omission, transaction or other activity of any kind or nature that occurred prior to the Consummation Date, whether or not such

holder filed a proof of claim. Upon full payment of the amounts compromised and detailed herein, secured creditors will turnover to the debtor for cancellation purposes of promissory notes encumbering personal and real property pertaining to this estate.

The order of confirmation of the Plan shall constitute an injunction against the pursuit of any claim or Equity Interest, whether or not a proof of claim or proof of interest based on any such debt, liability, or interest is filed or deemed filed, under 11 U.S.C. 501, such claim is allowed under 11 U.S.C. 502 or the holder of such claim has accepted this Plan in the manner set forth herein.

## ARTICLE VIV
## OBJECTIONS TO CLAIMS

The debtor, the trustee, both at their option, or upon order of the Bankruptcy Court, if requested, may file an objection to any claim as to its validity or amount before the closing of the case. If an objection is made, payment to such claimants will be made only after the entry of a final order by the Court allowing such claim and in accordance with the provisions of the Plan governing such class to which such claims belongs.

The claim of any general unsecured creditor who fails to file a proof of claim or that files its claim after the fixed claims bar date be disallowed by confirmation hearing.

## ARTICLE X
## EXECUTORY CONTRACTS

Except as stated herein, debtor assumes all unexpired leases and executory contracts to which it is a party and which have not been expressly rejected pursuant to 11 U.S.C. Section 365(a). Specifically, debtors have assumed throughout the

bankruptcy proceedings the following contracts:

   a. Suiza Dairy Corporation: Milk Production Contract.

## ARTICLE XI
## PROVISIONS FOR THE MODIFICATION OF THE PLAN

The debtor may propose amendments or modifications of this Plan at any time prior to its confirmation pursuant to 11 U.S.C. 1223. After confirmation of the Plan, the Reorganized Debtor may, with the approval of the Court and as long as it does not adversely affect the interest of the creditors, remedy any defect or omission, in such manner as may be necessary to carry out the purposes and effects of the same.

## ARTICLE XII
## CLOSING OF THE CASE

At such time as the case has been fully consummated, this case shall be closed. In order for the case to be close, the trustee shall file a final report and account showing that the case has been fully administered and the Plan has been fully consummated. The Court may conduct a hearing upon application thereof and after notice to all creditors and parties in interest. Thereafter an order approving the trustee's report and closing of the case shall be entered.

## ARTICLE XIII
## COMPLIANCE WITH LAWS AND GOOD FAITH

Debtor believes that the plan complies with all provisions of chapter 12 and any other applicable provision of the Bankruptcy Code, that the plan has been proposed in good faith and not by any means forbidden by law, and that all fees, charges or amounts required to be paid before confirmation have been paid.

## ARTICLE XIV
## CHAPTER 7 COMPARISON

Based upon the values of the debtor's assets and the amount of secured and unsecured claims as set forth in the debtor's chapter 12 statement, the debtor believes that the value, as of the effective date of the plan, of property to be distributed under the plan on account of each estate of the debtor were liquidated under chapter 7 of the Bankruptcy Code. Refer to Liquidation Analysis enclosed as **Exhibit A**.

## ARTICLE XV
## RETENTION OF JURISDICTION

The Bankruptcy Court shall retain jurisdiction over this case as is conferred upon it by law, rule or statute, or by this Plan, to enable the debtor to consummate any and all proceedings which they may bring before or after the entry of the order of confirmation, in order to carry out the provisions of this Plan, specifically meaning until payment of all creditors as listed in the Treatment of Classes, Article IV, supra.

**RESPECTFULLY SUMITTED,**

In Caguas, Puerto Rico, this 5 day of October of 2009.

**VICTOR GRATACOS DIAZ LAW OFFICE**
PO BOX 7571
CAGUAS, PR 00726
PHONE: (787) 746-4772 & FAX: (787) 746-3633

/s/ Víctor Gratacós-Díaz (127906)