## UNITED STATES BANKRUPTCY COURT
## DISTRICT OF PUERTO RICO

| | |
|---|---|
| IN RE:<br><br>LA FUNDADORA, INC.<br><br>DEBTOR | CASE NO. 09-05820 MCF<br><br>CHAPTER 12 |
| IN RE:<br><br>JUAN MIGUEL MUÑOZ ROLDAN<br>PATRICIA YVONNE GALINDEZ MATOS<br><br>DEBTORS | CASE NO. 09-05822 MCF<br><br>CHAPTER 12 |

### POST CONFIRMATION MODIFICATION CHAPTER 12 PLAN DATED AUGUST 23, 2013

Debtors are amending their Chapter 12 plan in accordance with 11 U.S.C. § 1229 of the Bankruptcy Code. Debtors' seek to amend their Chapter 12 Plan due to a series of factors describe as follows:

1. The steady decline of milk sales in the past years surpassed projections and even though Debtors' milk production steadily increased, Debtors' income has been adversely impacted. See, **Exhibit A.**

2. The Milk Processing Plants, Vaquería Tres Monjitas, Inc. ("VTM") and Suiza Dairy, Inc. ("Suiza") retain for processing as fresh milk, only the raw milk that they estimate they will be able to sell in the market. The remaining milk, known as "excess milk" is sent to Indulac which is a balancing plant. Indulac in turn processes raw milk as UHT fluid milk and/or as milk byproducts (butter, cheese, cream, etc...).

3. Dairy producers are paid according to milk yield or milk use and the percentage of milk used within the milk quota, which is the liquidation factor. All milk processed and sold as "Fresh Fluid Milk" by VTM and Suiza are paid to dairy farmers at the highest net price per liter (first level).

4. All UHT fluid milk which Indulac processes for the local market is paid at the second highest net price (second level). All UHT fluid milk which Indulac packs for private brands (ex. Borden) has the third highest price (third level).

5. Raw milk processed as milk by products, flavored milk, and milk sold to export markets has the lowest price, which is a blended price (fourth level). See, **Exhibit B.**

6. Therefore, if fluid milk sales decrease, milk producer's receive the same full price but for a lower percentage of their total milk production or milk quota. This in turn causes dairy farmers to receive

a lower price for a larger percent of their milk production as more and more milk is destined to milk by products or milk export markets.

7. Debtors' Chapter 12 Projections were drawn in 2009 and were based therefore, on milk market conditions and the Liquidation Price System as established in 2009. Debtors were able to comply comfortably with the Chapter 12 Plan as confirmed from 2009 until the end of 2011.

8. In 2009, dairy farmers were paid a full net price of .755¢ per liter for a yearly average of 88.95% of their biweekly milk quota. In 2010, dairy farmers were paid the full net price of 75.5¢ per liter for a yearly average of 93.49% of their milk quota. In 2011 milk price at farm level increased and therefore, dairy farmers received a full net price of .85¢ per liter for a yearly average of 89.45% of their milk quota. See, **Exhibit C-1 Thru C-3**

**Table 1**
**PERCENTAGE OF MILK USE WITHIN MILK QUOTA**
**(Liquidation Factor)**

| Year | % milk quota paid at first level (fresh milk & UHT local market) | Net price paid | % quota paid at other level | Price paid for other milk |
|---|---|---|---|---|
| 2009 | 88.95 | .755¢ per liter | 11.05 | .12-.32¢ per liter |
| 2010 | 93.49 | .755¢ per liter | 6.51 | .30-.50¢ per liter |
| 2011 | 89.45 | .85¢ per liter | 10.95 | .30-.50¢ per liter |

9. Yet, on 2012, the Puerto Rico Milk Industry price liquidation system, which is imposed and regulated by O.R.I.L., underwent significant changes which contributed to burden dairy farmer's economic situation.

10. Declining "fresh" fluid milk sales led Indulac to a financial cash flow crisis, as Indulac accumulated excess inventory. Indulac and O.R.I.L. undertook measures to mitigate Indulac's losses while trying at the same time to restructure Indulac's finances.

11. Therefore, on January 4, 2012, Indulac commenced making deferred payments to dairy farmers for the raw milk received and also destined an important volume of fluid milk to be sold as " UHT milk for exportation" in order to deal with its' excess inventory.

12. As a result, dairy farmers' net price for raw milk sold to Indulac fluctuated between .06-.335¢ per liter in concept of UHT milk paid through deferred payments and UHT milk to be exported. A significant volume of UHT milk sold in the local market was no longer paid at the first level price of .85¢ per liter. Moreover, part of the UHT milk destined for export market was eventually sold in the local market

2

though this milk was to dairy farmers at an "export" price and not at the mandated .85¢ per liter. See, **Exhibit D-1 thru D-4.**

13. Thus, by the year 2012, dairy producers were paid a full net price of .85¢ per liter for a yearly average of only 66.006% of their milk quota. The 15.637% of milk quota was paid through deferred payments or destined to export markets and paid at a price that fluctuated between .06-.35¢ per liter 3.745% of milk quota was destined to UHT fluid milk for private labels (Borden) and paid at 64.5¢ per liter. The remaining milk quota was destined to milk by-products, flavored milk, etc., and paid at an average price of .35¢ per liter. See, **Exhibit E.**

14. Projections for year 2012 could not foresee that dairy farmers would be subjected to deferred payments. Although projections did lower the liquidation factor for milk paid in the first level (fresh milk and UHT milk for local market) to 75% in the months of most milk production, this came short when compared to 2012's milk market conditions in Puerto Rico.

15. The year 2012 proved to be a challenging year for Debtors, as expenses surpassed milk income. By January 2013, Debtors had acquired a $20,000.00 debt with the feed mill. Throughout 2013, Indulac slowly commenced reimbursing the money it owed Dairy farmers. As of July 31, 2013, this repayment is still not complete.

**TABLE 2**
**PERCENTAGE OF MILK USE WITHIN MILK QUOTA 2012**
**(Liquidation Factor)**

| Year | % milk quota paid at first level (fresh & UHT local market) | Price paid at first level (net price) | % quota deferred payments & UHT export market | Price paid for Deferred & export market | % quota private labels |
|---|---|---|---|---|---|
| 2012 | 66.006% | .85¢/lt | 15.637% | .06-.35¢ per liter | 3.745% @ .645¢ per liter |

**TABLE 3**
**PERCENTAGE OF USE WITHIN MILK QUOTA 2013**
**(Jan. – June 2013) (Liquidation Factor)**

| Year | % milk quota used as fresh milk | % milk quota used as UHT local market | % milk quota used for UHT private labels | % milk quota used for export markets | Other uses & milk decommissioned |
|---|---|---|---|---|---|
| 2013 | 62.564% @ .72-.845¢ per liter | 11.754%@.755¢ per liter | 5.53%@.58-645¢ per liter | 6.198%@.105-18¢ per liter | 14.8% @.00 – 35¢ per liter |

3

LA FUNDADORA, INC.
CASE NO. 09-05820 MCF
POST CONFIRMATION MODIFICATION CHAPTER 12 PLAN
DATED: AUGUST 23, 2013

16. Due to these deferred payments, by November 2012, Indulac owed Debtor La Fundadora, Inc. the amount of $22,222.96. This amount did not include the money owed for UHT milk destined to export markets but which in the end, was sold locally at a higher price. See, **Exhibit F.**

17. On November 2012, Indulac restructured its debts and managed to stabilize its financial situation. Therefore, in 2013, Indulac stopped making deferred payments. Yet, as part of the restructuring process, Indulac could not receive nor process volumes of UHT milk which surpassed expected local milk sales. Furthermore, Indulac was to establish a Service Charge in order to collect at least $3.2MM per year.

18. Thus, on November 9, 2012 O.R.I.L. imposed a service charge on all raw milk to be processed as fluid milk. This service charge is to be paid by dairy farmers exclusively and serves to cover Indulac's fixed idle costs ("idle capacity') during the 7 biweekly period Indulac is expected to close yearly (Aug.-Nov). This service charge became effective on mid December 2012 and is distributed in the following way:

- .05¢ per liter processed as fluid fresh milk by Suiza Dairy and VTM.
- .5¢ per liter processed by Indulac as UHT milk for local market.

19. Therefore, dairy farmers were to receive a net price of .845¢ for each liter of raw milk sold to the processing plants Suiza and VTM instead of .85¢ per liter. Dairy farmer's were to receive only .755¢ for every liter Indulac processes as UHT fluid milk for local market, instead of the mandated net price of .85¢ per liter. See, **Exhibit G-1 thru G-5.**

20. For year 2013, only an average of 62.56% of dairy farmer's milk quota is being processed as "fresh" fluid milk (.845¢ per liter); 11.75% of milk quota is processed as UHT milk for local market (.755¢ per liter). The remaining milk within farmer's milk quota is paid at a price quite below the .845¢ and the .755¢ per liter mentioned above.

21. This Service Charge was not included in projections as it was impossible to foresee. In Debtor's case, this service charge alone represented a monthly income reduction of $783.00 for the liquidation periods covering January 2, 2013 through July 3, 2013.

22. As part of its new financial agreement, Indulac can only process 25.2 million quarts of milk per year as UHT milk for local market. This volume of milk is significantly lower than the volume of milk Indulac processed as UHT local milk in prior years. Before year 2007, Indulac paid dairy farmer's only .32¢ per liter, and could therefore; handle a larger volume of milk. See, **Exhibit H & Exhibit I -1 thru I -4.**

23. This in turn has caused a new level of excess milk for which there is no local market, as milk production as a whole, surpasses local milk sales. The end result of this is that milk had to be decommissioned at farm level throughout 2013. This milk was not paid to dairy farmers and the loss was

4

LA FUNDADORA, INC.
CASE NO. 09-05820 MCF
POST CONFIRMATION MODIFICATION CHAPTER 12 PLAN
DATED: AUGUST 23, 2013

initially distributed among all dairy farmers. This resulted in raw milk prices below .845¢ for milk used as fresh fluid milk and even lower blended prices than expected for milk paid at the last level (milk by products and milk to be exported).

24. In addition, large quantities of milk are being destined to export markets as UHT milk. Depending on the export market, dairy farmers receive only .105¢ and/or .18¢ per liter for this milk. We are submitting evidence which shows how for the liquidation period ending on May 8, 2013, milk to be processed as fresh fluid milk was paid at a blended price of .768210¢ per liter instead of .845¢ per liter if milk had not been decommissioned at farm level. Milk price was even lower for other Liquidation periods depending on the amount of milk decommissioned. See, **Exhibit J-1 and J-2.**

25. In the last years, dairy farmers have suffered an unprecedented increase in input costs. According to past performance, Debtors' projections included up to a 21% increase in feed costs by the year 2013. Yet feed cost alone fairly surpassed all expectations. In July 2010, dairy cattle feed cost $12.93 per hundredweight (quintal), but by July 2013 the price had steeped to $18.94 per hundredweight. This was a 32% price increase. Obviously, Feed costs for calves and heifers suffered the same fate. In July 2010, 50 pounds. Of Calf Starter cost $10.70, but by July 2013, the price had risen to $14.15 per 50 pounds. This too, represented a 32% price increment. See, **Exhibit K-1 thru K-8.**

26. As the evidence submitted shows, by July 2013, feed costs for dairy cattle had already increased by 32%, as compared to July 2010. This is significantly more than was expected in a three year period. The causes for this unexpected increase were the U.S.A.'s use of corn (prime ingredient in dairy concentrated feed) for Ethanol as bio fuel, and the severe drought which affected much of the United States' agricultural crops in 2011-2012. Debtors' feed costs for dairy cattle and heifers combined are up by $4,094.00 per month in 2013, as compared to year 2010. Yet dairy farmers' milk price in 2013 is lower than the milk price paid in 2011 and 2012, and roughly around the same as milk price for year 2010.

27. If you were to take Debtors' milk production for a biweekly period of July 2010 (16,086 liters) and compare that same production (16,086 liters) to the same biweekly period of July 2013, but with 2013's milk price, you can see that income from fresh milk sales for that same production was down by $270.52 per 14 days in 2013.

28. In the following tables we have summarized the information provided up to now. We have divided the total amount of dollars received for raw milk by the total amount of milk produced (in liters) to obtain an average price for all milk produced within milk quota. This average price per liter is called the blended or pool price. We have used the blended price to compare milk price at farm level throughout the years 2010-2013, according to Debtor's yearly milk production. See, **Exhibit L -1 thru L – 7.**

5

LA FUNDADORA, INC.
CASE NO. 09-05820 MCF
POST CONFIRMATION MODIFICATION CHAPTER 12 PLAN
DATED: AUGUST 23, 2013

### TABLE 4.A
### DEBTOR'S MILK PRODUCTION, MILK PRICE AND OPERATONAL COSTS
### YEARS 2010-2013

| Year | Milk production liters | % of Milk Quota occupied | Blended Price | Farm Expenses Includes Chap. 12 Payments |
|---|---|---|---|---|
| 2010 | 441,954 | 65.37 | .7550¢ per liter | $401.070.00 |
| 2011 | 556,451 | 82.53 | .8250¢ per liter | $474,516.00 |
| 2012 | 613,574 | 90.76 | .7077¢ per liter | $492.751.00 * |
| 2013 (Jan. – July 3) | 299,593 | 82.31 | .7698¢/per liter | $231,558.00** |

29. On 2012, Debtors Juan Miguel Muñoz and Patricia Galíndez derived a combined total of only $3,967.00 from La Fundadora, Inc. dairy farm, though they labored seven (7) days a week in the farm. Their combined wages should have been $27,773.20 for 2012.

30. Estimated cost, not exact for 2013. Juan Miguel Muñoz and Patricia Galíndez are not receiving wages from La Fundadora, Inc., as milk sales income does not suffice for this. The feed mill is currently allowing La Fundadora, Inc. to pay on a credit basis.

### TABLE 4.B
### DEBTORS' MILK PRODUCTION, BLENDED PRICE, AND MILK INCOME
### YEARS 2010-2013
**Includes all milk sold to Suiza Dairy and Indulac combined**

| Year | Milk Production liters | % Milk Quota occupied | Blended Price | Milk Income (other income not included) | Difference in Milk income compared to prior year |
|---|---|---|---|---|---|
| 2010 | 441.954 | 65.37 | .7550¢ per liter | $333,675.20 | |
| 2011 | 556.451 | 82.53 | .8250¢ per liter | $459,106.50 | $125.431.30 |
| 2012 | 613,574 | 90.76 | .7077¢ per liter | $434,224.00 | ($24,882.50) |
| 2013 (Jan. – July) | 299,593 | 82.31 | .7698¢ per liter | $230,651.82 | $13,539.83 compared to Jan. – July 2012 |

31. The above tables illustrate how, even though Debtors' milk production steadily increased as projected, income from milk sales decreased, as blended price decreased. Moreover, as milk production increases, input costs also increase. Sadly, the same cannot be said for income coming from milk sales as the Puerto Rican fresh milk market is a contracting market and not an expanding one.

32. As **Tables 4.A and 4.B** expose, in 2013, Debtors voluntarily reduced milk production as it was no longer cost effective to sustain 2012's milk production.

33. We have compared Debtors' 15th biweekly Liquidation Period (which corresponds to July of each year) for years 2010-2013 in the table below to better illustrate the case in point. Income used is only from milk sales from Fresh Fluid Milk (first level of production) and does not include milk sold to

6

LA FUNDADORA, INC.
CASE NO. 09-05820 MCF
POST CONFIRMATION MODIFICATION CHAPTER 12 PLAN
DATED: AUGUST 23, 2013

Indulac as excess milk. See, **Exhibit M-1 thru M-5.**

TABLE 5
MILK PRODUCTION, LIQUIDATION FACTOR AND MILK SALES
INCOME FOR JULY 2010-2013

| Year | Milk Production Liters | % of Milk Quota occupied | Liquidation Factor for Fresh Milk | Income from milk sales | Difference in milk income compared to prior year | Farm Expenses (includes Chap. 12 payment) |
|---|---|---|---|---|---|---|
| 2009 | 8,844 | 34% | 61.97 % | 6,677.22 @ .755¢ per liter | | |
| 2010 | 16,086 | 61.87% | 62.36% | $12,144.93 @ .755¢ per liter | $5,467.71 | $33,423.00 |
| 2011 | 23,386 | 89.95% | 59.623% | $13,176.70 @ .85¢ per liter | $1,031.77 | $39,543.00 |
| 2012 | 27,087 | 1% over milk quota | 60.4390% | $13,356.90 @ .85¢ per liter | $180.20 | $41,063.00 |
| 2013 | 20,086 | 77.25% | 54.3730% | $11,875.08 @ .84¢ per liter | ($1,481.82) | $38,563.00 |

34. It is interesting to note how a biweekly milk production of 16,086 liters in 2010 derived $269.85 more in income than the biweekly milk production of 20,086 liters in 2013.

35. Debtors' Chapter 12 Plan proposed a purchase of 5,600 liters of biweekly milk quota. This purchase was to be financed through a loan with USDA-FSA in May 2011. This purchase was not made, as in 2011 milk price at farm level increased, and Debtors could comply with the Chapter 12 Plan payment without need of acquiring more debt.

36. By 2012, O.R.I.L.'s then Administrator told Debtors that any new quota purchased recently would probably not be included as part of Debtors' "productive" milk quota in the new method that O.R.I.L. was seeking to impose in order to temperate milk production with milk demand. O.R.I.L. has continuously stated that milk production must be tempered to local milk sales. O.R.I.L. is currently analyzing measures to implement a method that will ensure a balance between supplies (milk production) and demand (milk sales). Therefore, Debtors are awaiting the outcome of this new method in order to analyze the feasibility of incurring more debt to purchase more milk quota.

37. Even though milk price at farm level has increased since 2009, when Debtor's Chapter 12 Plan was confirmed, the percentage of milk quota paid at the first level (highest price) has decreased in such a way that farm income from milk sales is now lower than in 2009.

38. Furthermore, input costs, especially feed and electricity have exceeded projections. On 2012, deferred payments and Indulac's Service charge further strained Debtors' economy. In feed costs and service charge alone, Debtors' expenses in 2013 exceed projections by $2,877.00 per month. This does not include the reduction in farm income from declining milk sales.

39. O.R.I.L. has stated that both, Indulac's Service Charge and Indulac's restriction of 25 MM liters of volume of UHT mill per year are transitory measures. The Board members of FEP, Inc. (Fondo de

LA FUNDADORA, INC.
CASE NO. 09-05820 MCF
POST CONFIRMATION MODIFICATION CHAPTER 12 PLAN
DATED: AUGUST 23, 2013

Estabilización de Precios) which is comprised by members of the Puerto Rican Dairy Farmers Association, are working with ORIL to see if the FEM (Fondo Especial de Mercadeo) can prospectively reimburse Indulac's Service Charge to dairy farmers. In addition, Indulac envisions that in the forthcoming years it will be able to handle and market all "excess" milk it receives more efficiently and at better prices for dairy farmers than currently established, as well as double the volume of milk it handles.

40. Debtors understand that it is their responsibility to pay their Creditors. Debtors seek to amend their Chapter 12 Plan, in order to continue complying with Creditors but in a manner that also allows Debtors to operate their Dairy Farm business.

The above captioned Debtors, La Fundadora, Inc. and Juan Miguel Muñoz Roldán and Patricia Yvonne Galindez Matos, by and through the undersigned counsel, hereby submits the following proposed post confirmation modification chapter 12 plan of reorganization pursuant to the provisions of 11 U.S.C. Section 1201, et seq., and specifically to 11 U.S.C. Section 1222.

Pursuant to the provisions of Sections 1222 of the Code, debtor proposes the classification and treatment of claims as hereinafter stated.

Creditors and other parties in interest are urged to read and consider this post confirmation modification chapter 12 plan in its entirety since this represents a proposed legally binding agreement between the debtor, creditors and parties in interest.

## ARTICLE I
## DEFINITIONS

For the purposes of this Plan of Reorganization, the following terms shall have the respective meanings set forth.

1. **"Bar Date"** shall mean the deadline of November 9, 2009 for all general unsecured creditors and January 13, 2010 for all governmental creditors, after which any proof of claim filed will not have any effect on this Plan and will not entitle its holder to participate with other Claims under this Plan.

2. **"Confirmation Date"** shall mean the date the Order of Confirmation in this Chapter 12 proceeding and becomes a Final Order.

3. **"Consummation Date"** shall mean the date by which all of the conditions precedent to full consummation set forth in this Plan, shall have be met or waived.

4. **"Debtor"** shall mean the corporation in case 09-05820MCF for La Fundadora, Inc. and the individual in case 09-05822MCF of Juan Miguel Muñoz Roldán and Patricia Yvonne Galindez Matos.

5. **"Effective Date of the Plan"** shall mean forty-five (45) days after the order of confirmation of the plan, becomes a final order and shall b e the date on which there shall be made all cash payments required by the Plan.

LA FUNDADORA, INC.
CASE NO. 09-05820 MCF
POST CONFIRMATION MODIFICATION CHAPTER 12 PLAN
DATED: AUGUST 23, 2013

6. **"Liquidation Analysis"** shall mean the comparison of the current assets and liabilities of the Debtor, in order to determine the Liquidation Value of the Debtor's Property. **Exhibit N.**

7. **"Liquidation Value"** shall mean the value that, any item of the Debtor's Property could be expected to bring during Liquidation.

8. **"Order of Confirmation"** shall mean the Order of the Bankruptcy Court confirming this Plan, pursuant to 11 U.S.C. § 1325.

9. **"Petition Date"** shall mean July 15, 2009; the date on which the Debtors' filing of his Voluntary Petition commenced the instant Chapter 12 proceedings.

10. **"Trustee"** shall mean the standing Chapter 12 Trustee, Jose R. Carrión Morales, Esq.

11. **"Voluntary Petition"** shall mean the voluntary Petition for Relief filed by the Debtors on the Petition Date for cases 09-05820 MCF and 09-05822 MCF.

## ARTICLE II
## ASSETS AND LIABILITIES AS OF PETITION DATE

**1) ASSETS**:

Debtors' asset composition as listed on Schedules A and B has remained substantially unchanged. Personal and Business assets were detailed in the schedules filed.

These properties were schedule and purport an aggregate value of $2,170,081.00 according to the last appraisal reports. Debtors' residential property is comprised of 1.00 cdas. Located at Rocha Ward, Road no. 444 Km. 7 Hm. 4, Moca, Puerto Rico. This Property is not registered at the Public Registry. The same has been value at $50,000.00

The remaining (6) properties are the following:

a) Lot of land no. 12,684 comprised of 44.592 cdas located at Rocha Ward, Road no. 444 Km. 7 Hm. 4, Moca, Puerto Rico, with a value of $676,492.50.

b) Lot of land comprised of 1.971 cdas, located at Rocha Ward, Road no. 444 Km. 7 Hm. 4, Moca, Puerto Rico, with a value of $25,000.00. This Property is not registered at the Public Registry.

c) Lot of land no. 5116 comprised of 11.26 cdas, located at Rocha Ward, Road no. 444 Km. 7 Hm. 4, Moca, Puerto Rico, with a value of $110,000.00.

d) Lot of land comprised of 15 centimes located at Rocha Ward, Road no. 444 Km. 7 Hm. 4, Moca, Puerto Rico, with a value of $5,000.00. This Property is not registered at the Public Registry.

e) Three lot lands with a total value of $1,826,989.00, divided as follows:

   1. Lot of land no. 647 comprised of 130 cdas located at Rocha Ward, Road no. 444 Km. 7 Hm. 4, Moca, Puerto Rico.

   2. Lot of land no. 938 comprised of 39 cdas located at Rocha Ward, Road no. 444 Km. 7 Hm. 4, Moca, Puerto Rico.

9

LA FUNDADORA, INC.
CASE NO. 09-05820 MCF
POST CONFIRMATION MODIFICATION CHAPTER 12 PLAN
DATED: AUGUST 23, 2013

3. Lot of land comprised of 5.81 cdas located at Rocha Ward, Road no. 444 Km. 7 Hm. 4, Moca, Puerto Rico. This Property is not registered at the Public Registry.

f) Parcel of land no. 3,281 comprised of 6553sq. mt. Located at Rocha Ward, Road no. 444 Km. 7 Hm. 4, Moca, Puerto Rico, with a value of $6,600.00.

g) Parcel of land no. 12,684 comprised of 1.00 cdas located at Rocha Ward, Road no. 444 Km. 7 Hm. 4, Moca, Puerto Rico, with a value of $10,000.00. This Property is not registered at the Public Registry.

The group of lots described in subsections (a) (c) (e) and (g) are occupied as a dairy farm.

Personal assets were scheduled in the total amount of $875,910.20 owned by Debtors are breakdown as follows: $1,658.00.00 as miscellaneous personal properties such as cash in hand, checking accounts, and utility bond; $2,600.00 were listed as household goods and clothing; $300.00 were listed as jewelry; $18,620.00 were listed as vehicles; $62,500.00 were listed as farm equipment and supplies used in business; $187,500.00 were listed as farm animals, particularly cattle cows.

Debtors also listed the interest over the milk production rights comprised of 26,000 production liters with an approximate fair market value of $23.00 per liter for a total amount of $597,000.00.

A reconciliation of the Debtors' assets and the projected liquidation scenario is presented in the Liquidation Analysis as **Exhibit N.**

h) **LIABILITIES:**

According to the schedules filed and proof of claims filed in this case, the sum of all secured claims is approximately $1,947,100.80. The sum of all general unsecured claims is approximately $478,547.00; unsecured priority claims as defined 11 U.S.C. § 507 (a)(8) are approximately $16,585.19.

For a detail of all outstanding debts, classified pursuant the terms of this plan refer to Schedule of Payments as **Exhibit B**.

## ARTICLE III
## DESIGNATION OF CLAIMS, TREATMENT FOR CLASSES AND INTEREST

A. **DESIGNATION OF CLAIMS**

The plan divides creditors into the following six (6) classes:

### CLASS 1 TRUSTEE'S EXPENSES

This Class 1 shall consist of the Chapter 12 trustee statutory commission computed pursuant to 28 U.S.C. § 586(e).

The Chapter 12 trustee shall receive and retain the following fee: ten percent (10%) of all payments distributed by the trustee that combined do not exceed the amount of $450,000.00; three percent (3%) of all payments distributed by the trustee that combined amount higher than $450,000.01 but not in excess of $1,000,000.00; and three percent (3%) or less of all payments distributed by the trustee that

10

LA FUNDADORA, INC.
CASE NO. 09-05820 MCF
POST CONFIRMATION MODIFICATION CHAPTER 12 PLAN
DATED: AUGUST 23, 2013

combined exceed the amount of $1,000,000.00.

## CLASS 2 ADMINISTRATIVE EXPENSES

These expenses shall be the Allowed Administrative Expenses pursuant Section 503 of the Code. This class will be paid by the Chapter 12 Trustee in full as soon as practicable, as of (a) the Effective Date or (b) during the first year following the confirmation of the plan.

These amounts will be determined and fixed upon written application to the Court.

## CLASS 3 BANCO SANTANDER POC NO. 13, 14, 15 & 16

Banco Santander ("Santander") is secured by mortgage promissory notes encumbering, the following:

a) Lot of land no. 12,684 comprised of 44.592 cdas located at Rocha Ward, Road no. 444 Km. 7 Hm. 4, Moca, Puerto Rico, with a value of $676,492.50.

b) Lot of land no. 5116 comprised of 11.26 cdas, located at Rocha Ward, Road no. 444 Km. 7 Hm. 4, Moca, Puerto Rico, with a value of $110,000.00.

c) Three lot lands with a total value of $1,826,989.00, divided as follows:

   1. Lot of land no. 647 comprised of 130 cdas located at Rocha Ward, Road no. 444 Km. 7 Hm. 4, Moca, Puerto Rico.
   2. Lot of land no. 938 comprised of 39 cdas located at Rocha Ward, Road no. 444 Km. 7 Hm. 4, Moca, Puerto Rico.
   3. Lot of land comprised of 5.81 cdas located at Rocha Ward, Road no. 444 Km. 7 Hm. 4, Moca, Puerto Rico. This Property is not registered at the Public Registry.

d) Parcel of land no. 12,684 comprised of 1.00 cdas located at Rocha Ward, Road no. 444 Km. 7 Hm. 4, Moca, Puerto Rico, with a value of $10,000.00. This Property is not registered at the Public Registry.

Debtors' listed 26,000 liters of milk quota in the amount of $442,000.00 authorized to Debtor by Oficina de Reglamentación de Industria Lechera under license number 3124. The total amount of Santander collaterals shall be $1,944,700.50.

**Debt Balance Restructuring Upon Confirmation:** As such, this class will be paid in the amount of $1,955,000.00 including arrears owed to creditor as follows:

The monthly payments to be received by Santander will be in the amount of $8,504.64 from November 2009 through August 2013. This monthly payment will be applied to the principal and interest for a period of forty-six (46) month. The same will be at an interest rate of 3.25% and amortized over a period of thirty (30) years. This payment will be made directly to creditor through Suiza Dairy, Inc. ("Suiza").

From September 2013 through October 2014, Debtors monthly payments will be in the amount of

11

LA FUNDADORA, INC.
CASE NO. 09-05820 MCF
POST CONFIRMATION MODIFICATION CHAPTER 12 PLAN
DATED: AUGUST 23, 2013

$5,200.00; thus, payments will be made for period of fourteen (14) month, at an interest rate of 3.25%. This payment will be made directly to Santander through Suiza.

From November 2014 through October 2024, Debtors will increase their monthly payments to the amount of $9,297.00; thus, payments will be made for period of one hundred twenty (120) month, at an interest rate of 3.75%. This payment will be made directly to Santander through Suiza.

From November 2024 through October 2039, Debtors will increase their monthly payments to the amount of $9,297.00; thus, payments will be made for period of one hundred eighty (180) month, at an interest rate of 4.00%. This payment will be made directly to Santander through Suiza.

Refer to Schedule of Payments under the Plan of Reorganization enclosed herein as **Exhibit O**. See **Exhibit R** current interest rate as of August 2013 and **Exhibit Q** as loan calculator table.

If at any moment, Debtors decide to sell or refinance there will be no penalties as to the unpaid balance. Regarding the security agreements over personal property, this creditor will retain unaltered the legal and contractual rights over the property serving as collateral until full payment of the secured amount as detailed in the plan.

### CLASS 4 FIRST BANK OF PUERTO RICO – POC NO. 2

First Bank of Puerto Rico ("First Bank") filed proof of claim no. 2 in the amount of $5,568.60. The arrears of $340.00 will be covered through the Chapter 12 plan with the proposed schedule of payments. Creditor shall retain unaltered its legal equitable and contractual rights.

### CLASS 5 PRIORITY CLAIMS

This class will be paid as per proof of claim filed by all allowed unsecured priority claims classified pursuant to 11 U.S.C. § 507 (a)(8) of the Bankruptcy Code, the same will be paid according to the claim or superseding claim filed by these government entities.

- Internal Revenue Services filed proof of claim no.5 in the amount of $4,680.00
- Department of Treasury filed proof of claim no. 10 in the amount of $510.68.
- Department of Treasury filed proof of claim no. 18 in the amount of $95.91.
- Department of Labor filed proof of claim no. 19 in the amount of $306.44

The present value of these debts is $5,593.03 and will be pay through the Chapter 12 Trustee through monthly installments commencing on the effective date of the plan within a sixty (60) month period.

### CLASS 6 CRIM – STATUTORY LIEN OVER REAL PROPERTIES - POC NO. 5

CRIM filed proof of claim no.7 in the amount of $11,823.70 as secured will be covered through the Chapter 12 plan with the proposed schedule of payments.

### CLASS 7 – GENERAL UNSECURED CREDITORS

General unsecured creditors, including any Claim specified in 11 U.S.C. Sections 502(g), 502(h)

LA FUNDADORA, INC.
CASE NO. 09-05820 MCF
POST CONFIRMATION MODIFICATION CHAPTER 12 PLAN
DATED: AUGUST 23, 2013

or 502 (I), considered in this class are the following: the unsecured creditors listed on the schedules, those who filed a proof of claim and those secured creditors who have agreed to have the unsecured part of their claim treated under this class. The debt under this class has been estimated by Debtors in the amount of no more than $160,731.39 including present value with an additional 3.25% of legal interest for a total amount of $174,884.73. See Liquidation Analysis as **Exhibit N.**

This class will receive payments from the monthly installments made by Debtors to the Chapter 12 Trustee. The length of the plan is for sixty (60) months commencing forty-five (45) days after the confirmation of the plan and in the amounts specified in the Payment Proposal enclosed herein as **Exhibit P**. Upon confirmation of the plan, these monthly payments will be paid directly to the Trustee from the business operations, named La Fundadora, Inc. on the basis of consecutive monthly installments by Suiza Dairy, Inc. to the Trustee as indicated in the Schedule of Payments as **Exhibit O.**

**The Base Balance in this case is $220,301.62. Debtors have paid the amount of $60,050.00 from the confirmation of plan on December 3, 2009 through August 2013. The remaining base balance is this case is in the amount of $146,300.00. See, Docket no. 45. In addition, Debtors will sell the lots of land to fund the plan on or before the next twelve (12) month.**

## ARTICLE IV
## PENDING LITIGATION

Debtors state that, as of this date, to the best knowledge and belief there is no pending or threatened litigation that may affect the liability or asset composition of their personal business.

## ARTICLE V
## MEANS OF EXECUTION OF THE PLAN AND FEASIBILITY

Debtors have sufficient funds to make all payments due under this Plan. The funds will be obtained from the business operations of La Fundadora, Inc. Business projections for the one (1) year will be filed during the next ten (10) days. The projections will serve as guidelines for the dairy farm operations. Said projections depend on the changes of Industria Lechera's price per liter and the authorized percentage of the bi-weekly liquidation of the milk quota. These projections are made for a period of one (1) year given that making them for a longer period would be impractical, since they depend on the unpredictable changes of Industria Lechera's price per liter, the authorized percentage of the bi-weekly liquidation of the milk quota, and the increases per one hundred (100) pounds of the feed for cows.

## ARTICLE VI
## EFFECT OF CONFIRMATION AND DISCHARGE

All property of the estate vests in Debtors upon confirmation except as otherwise provided in the plan or confirmation order. The property vests free of creditor's claims except for debts not discharged, or as otherwise stated in the plan or confirmation order, according to 11 U.S.C. §1227(b) and §1227(c).

LA FUNDADORA, INC.
CASE NO. 09-05820 MCF
POST CONFIRMATION MODIFICATION CHAPTER 12 PLAN
DATED: AUGUST 23, 2013

The Chapter 12 discharge is received when all payments under the plan are completed, except for payments exceeding the term of the plan 11 U.S.C. §1228(a). Upon completing all conditions precedent to the consummation of this plan, all existing claims shall be deemed to be exchanged, satisfied, discharged and release in full; and all holders of claims shall be precluded from asserting any other or future claim against Debtor, based upon any act or omission, transaction or other activity of any kind or nature that occurred prior to the Consummation Date, whether or not such holder filed a proof of claim. Upon full payment of the amounts compromised and detailed herein, secured creditors will turn over to the Debtors for cancellation purposes of promissory notes encumbering personal and real property pertaining to this estate.

A hardship discharge may be granted by the court if Debtor is unable to make plan payments and if such failure is beyond the Debtor's control, creditors have received at least the liquidation value of their claim, and post confirmation plan modification is not practicable pursuant §1228(b).

The order of confirmation of the Plan shall constitute an injunction against the pursuit of any claim or Equity Interest, whether or not a proof of claim or proof of interest based on any such debt, liability, or interest is filed or deemed filed, under 11 U.S.C. 501, such claim is allowed under 11 U.S.C. 502 or the holder of such claim has accepted this Plan in the manner set forth herein.

## ARTICLE VII
## OBJECTIONS TO CLAIMS

The Debtors, the Trustee, both at their option, or upon order of the Bankruptcy Court, if requested, may file an objection to any claim as to its validity or amount before the closing of the case. If an objection is made, payment to such claimants will be made only after the entry of a final order by the Court allowing such claim and in accordance with the provisions of the Plan governing such class to which such claim belongs.

The claim of any general unsecured creditor who fails to file a proof of claim or that files its claim after the bar date, will be disallowed by the confirmation hearing.

## ARTICLE VIII
## EXECUTORY CONTRACTS

Except as stated herein, all unexpired leases and executory contracts to which it is a party and which have not been expressly rejected pursuant to 11 U.S.C. § 365(a). Specifically, Debtors are assuming throughout the bankruptcy proceedings the following contracts**:**

   a.  Suiza Dairy, Inc.: Milk Production Contract.

## ARTICLE IX
## PROVISIONS FOR THE MODIFICATION OF THE PLAN

The Debtors may propose amendments or modifications of this Plan at any time prior to its

14

LA FUNDADORA, INC.
CASE NO. 09-05820 MCF
POST CONFIRMATION MODIFICATION CHAPTER 12 PLAN
DATED: AUGUST 23, 2013

confirmation pursuant to 11 U.S.C. § 1223. After confirmation of the Plan, the Reorganized Debtors may, with the approval of the Court and as long as it does not adversely affect the interest of the creditors, remedy any defect or omission, in such manner as may be necessary to carry out the purposes and effects of the same.

## ARTICLE X
## CLOSING OF THE CASE

At such time as the case has been fully consummated, this case shall be closed. In order for the case to be close, the trustee shall file a final report and account showing that the case has been fully administered and the Plan has been fully consummated. The Court may conduct a hearing upon application thereof and after notice to all creditors and parties in interest. Thereafter an order approving the trustee's report and closing of the case shall be entered.

## ARTICLE XI
## COMPLIANCE WITH LAWS AND GOOD FAITH

Debtors believe that the plan complies with all provisions of a chapter 12 plan and any other applicable provision of the Bankruptcy Code. The plan has been proposed in good faith and not by any means forbidden by law, and that all fees, charges or amounts required to be paid before confirmation have been paid.

## ARTICLE XII
## RETENTION OF JURISDICTION

The Bankruptcy Court shall retain jurisdiction over this case as is conferred upon it by law, rule or statute, or by this Plan, to enable the Debtors to consummate any and all proceedings which they may bring before or after the entry of the order of confirmation, in order to carry out the provisions of this Plan, specifically meaning until payment of all creditors as listed in the Treatment of Classes, Article III, supra.

**HEREBY CERTIFY,** that a copy of the Chapter 12 Plan has been electronically filed with the Clerk of the Bankruptcy Court using CM/ECF system which will forward a copy of the same to the office of Jose R. Carrion Morales, Esq.; Chapter 12 Trustee and to all creditors and parties in interest as per the Master Address List giving them twenty-one (21) days to reject the proposed plan and request a hearing. Absent good cause, untimely rejections shall be denied.

## NOTICE

Within twenty-one (21) days after service as evidenced by the certification, and an additional three (3) days pursuant to Fed. R. Bank. P. 9006(f) if you were served by mail, any party against whom this **POST CONMFIRMATION MODIFICATION CHAPTER 12 PLAN** has been served, or any other party to the action who objects to the relief sought herein, shall serve and file an objection or other appropriate response to this paper with the clerk's office of

15

LA FUNDADORA, INC.
CASE NO. 09-05820 MCF
POST CONFIRMATION MODIFICATION CHAPTER 12 PLAN
DATED: AUGUST 23, 2013

the United States Bankruptcy Court for the District of Puerto Rico. If no objection or other response is filed within the time allowed herein, the paper will be deemed unopposed and may be granted unless: (i) the requested relief is forbidden by law; (ii) the requested relief is against public policy; or (iii) in the opinion of the Court, the interest of justice requires otherwise.

**RESPECTFULLY SUMITTED,**

In Caguas, Puerto Rico, this 23th day of August, 2013.

**GRATACOS LAW FIRM, P.S.C.**
PO BOX 7571
CAGUAS, PR 00726
PHONE: (787) 746-4772 & FAX: (787) 746-3633
EMAIL: bankruptcy@gratacoslaw.com

/s/ Victor Gratacós-Díaz (127906)

LA FUNDADORA, INC.
CASE NO. 09-05820 MCF
POST CONFIRMATION MODIFICATION CHAPTER 12 PLAN
DATED: AUGUST 23, 2013

**EXHIBIT A**

**UNITED STATES BANKRUPTCY COURT**
**DISTRICT OF PUERTO RICO**

| | |
|---|---|
| IN RE:<br><br>LA FUNDADORA, INC.<br><br>DEBTOR | CASE NO. 09-05820 MCF<br><br>CHAPTER 12 |
| IN RE:<br><br>JUAN MIGUEL MUÑOZ ROLDAN<br>PATRICIA YVONNE GALINDEZ MATOS<br><br>DEBTORS | CASE NO. 09-05822 MCF<br><br>CHAPTER 12 |

**POST CONFIRMATION MODIFICATION CHAPTER 12 PLAN PAYMENT PROPOSAL TO:**

**CLASS 3 BANCO SANTANDER POC NO. 13, 14, 15 & 16**

Banco Santander ("Santander") is secured by mortgage promissory notes encumbering, the following:

e) Lot of land no. 12,684 comprised of 44.592 cdas located at Rocha Ward, Road no. 444 Km. 7 Hm. 4, Moca, Puerto Rico, with a value of $676,492.50.

f) Lot of land no. 5116 comprised of 11.26 cdas, located at Rocha Ward, Road no. 444 Km. 7 Hm. 4, Moca, Puerto Rico, with a value of $110,000.00.

g) Three lot lands with a total value of $1,826,989.00, divided as follows:

   4. Lot of land no. 647 comprised of 130 cdas located at Rocha Ward, Road no. 444 Km. 7 Hm. 4, Moca, Puerto Rico.

   5. Lot of land no. 938 comprised of 39 cdas located at Rocha Ward, Road no. 444 Km. 7 Hm. 4, Moca, Puerto Rico.

   6. Lot of land comprised of 5.81 cdas located at Rocha Ward, Road no. 444 Km. 7 Hm. 4, Moca, Puerto Rico. This Property is not registered at the Public Registry.

h) Parcel of land no. 12,684 comprised of 1.00 cdas located at Rocha Ward, Road no. 444 Km. 7 Hm. 4, Moca, Puerto Rico, with a value of $10,000.00. This Property is not registered at the Public Registry.

Debtors' listed 26,000 liters of milk quota in the amount of $442,000.00 authorized to Debtor by Oficina de Reglamentación de Industria Lechera under license number 3124. The total amount of

17

LA FUNDADORA, INC.
CASE NO. 09-05820 MCF
POST CONFIRMATION MODIFICATION CHAPTER 12 PLAN
DATED: AUGUST 23, 2013

Santander collaterals shall be $1,944,700.50.

**Debt Balance Restructuring Upon Confirmation:** As such, this class will be paid in the amount of $1,955,000.00 including arrears owed to creditor as follows:

The monthly payments to be received by Santander will be in the amount of $8,504.64 from November 2009 through August 2013. This monthly payment will be applied to the principal and interest for a period of forty-six (46) month. The same will be at an interest rate of 3.25% and amortized over a period of thirty (30) years. This payment will be made directly to creditor through Suiza Dairy, Inc. ("Suiza").

From September 2013 through October 2014, Debtors monthly payments will be in the amount of $5,200.00; thus, payments will be made for period of fourteen (14) month, at an interest rate of 3.25%. This payment will be made directly to Santander through Suiza.

From November 2014 through October 2024, Debtors will increase their monthly payments to the amount of $9,297.00; thus, payments will be made for period of one hundred twenty (120) month, at an interest rate of 3.75%. This payment will be made directly to Santander through Suiza.

From November 2024 through October 2039, Debtors will increase their monthly payments to the amount of $9,297.00; thus, payments will be made for period of one hundred eighty (180) month, at an interest rate of 4.00%. This payment will be made directly to Santander through Suiza.

Refer to Schedule of Payments under the Plan of Reorganization enclosed herein as **Exhibit O**. See **Exhibit R** current interest rate as of August 2013 and **Exhibit Q** as loan calculator table.

If at any moment, Debtors decide to sell or refinance there will be no penalties as to the unpaid balance. Regarding the security agreements over personal property, this creditor will retain unaltered the legal and contractual rights over the property serving as collateral until full payment of the secured amount as detailed in the plan.

### CLASS 4 FIRST BANK OF PUERTO RICO – POC NO. 2

First Bank of Puerto Rico ("First Bank") filed proof of claim no. 2 in the amount of $5,568.60. The arrears of $340.00 will be covered through the Chapter 12 plan with the proposed schedule of payments. Creditor shall retain unaltered its legal equitable and contractual rights.

### CLASS 5 PRIORITY CLAIMS

This class will be paid as per proof of claim filed by all allowed unsecured priority claims classified pursuant to 11 U.S.C. § 507 (a)(8) of the Bankruptcy Code, the same will be paid according to the claim or superseding claim filed by these government entities.

- Internal Revenue Services filed proof of claim no.5 in the amount of $4,680.00
- Department of Treasury filed proof of claim no. 10 in the amount of $510.68.

18

LA FUNDADORA, INC.
CASE NO. 09-05820 MCF
POST CONFIRMATION MODIFICATION CHAPTER 12 PLAN
DATED: AUGUST 23, 2013

- Department of Treasury filed proof of claim no. 18 in the amount of $95.91.
- Department of Labor filed proof of claim no. 19 in the amount of $306.44

The present value of these debts is $5,593.03 and will be pay through the Chapter 12 Trustee through monthly installments commencing on the effective date of the plan within a sixty (60) month period.

### CLASS 6 CRIM – STATUTORY LIEN OVER REAL PROPERTIES - POC NO. 5

CRIM filed proof of claim no.7 in the amount of $11,823.70 as secured will be covered through the Chapter 12 plan with the proposed schedule of payments.

### CLASS 7 – GENERAL UNSECURED CREDITORS

General unsecured creditors, including any Claim specified in 11 U.S.C. Sections 502(g), 502(h) or 502 (I), considered in this class are the following: the unsecured creditors listed on the schedules, those who filed a proof of claim and those secured creditors who have agreed to have the unsecured part of their claim treated under this class. The debt under this class has been estimated by Debtors in the amount of no more than $160,731.39 including present value with an additional 3.25% of legal interest for a total amount of $174,884.73. See Liquidation Analysis as **Exhibit N.**

This class will receive payments from the monthly installments made by Debtors to the Chapter 12 Trustee. The length of the plan is for sixty (60) months commencing forty-five (45) days after the confirmation of the plan and in the amounts specified in the Payment Proposal enclosed herein as **Exhibit P**. Upon confirmation of the plan, these monthly payments will be paid directly to the Trustee from the business operations, named La Fundadora, Inc. on the basis of consecutive monthly installments by Suiza Dairy, Inc. to the Trustee as indicated in the Schedule of Payments as **Exhibit O.**

**The Base Balance in this case is $220,301.62. Debtors have paid the amount of $60,050.00 from the confirmation of plan on December 3, 2009 through August 2013. The remaining base balance is this case is in the amount of $146,300.00. See, Docket no. 45. In addition, Debtors will sell the lots of land to fund the plan on or before the next twelve (12) month.**